DEKLE, Justice.
The District Court of Appeal, Fourth District, having certified to us that its decision in the case of The Municipal Court, City of Fort Lauderdale, Florida v. Patrick, 241 So.2d 195 (4th DCA Fla. 1971) (Opinion filed November 18, 1970), passes upon a question of great public interest, we accepted jurisdiction for review pursuant to Article V, Section 4(2), Florida Constitution, F.S.A.
The question as certified is:
Whether or not Section 57(e) of the Charter of the City of Fort Lauderdale, Florida conferred authority on the May- or of the City to establish a curfew proclamation and a penalty for its violation enforceable by the Municipal Court of the City of Fort Lauderdale, Florida, because of riotous conditions existing within the said City in September of 1969?
Civil disobedience and threatened mob action in the City of Fort Lauderdale September 1 and 2, 1969, are the backdrop for this suit providing an object lesson of significant proportion anent the unfortunate and turbulent conditions exploding today, particularly in some of our cities over the nation. Here there were some citizens who forgot the Rule of Law which is the foundation of a truly free society. They proceeded without regard for law to destroy, burn and loot in one area of the city. The situation was sufficiently grave that the City Commission as authorized by said § 57(e) adopted a Resolution on September 2 declaring a situation of grave public danger and a state of emergency to exist within the City of Fort Lauderdale. At the same meeting the Mayor issued a proclamation of emergency pursuant to the same *194 section of the City Charter for a curfew and established penalties for its violation.
Cities must he prepared in advance for appropriate and immediate action when such situations arise. Preparation is essential to meet the grave threat of anarchy which unfortunately has been a fact, in rising crescendo, in many cities. Those citizens who apparently do not appreciate their freedom (perhaps it is more a failure to understand it) do not seem to realize that it is grounded in a respect for law. They must be dealt with effectively and immediately in such situations or their own freedom (and ours) falls. Governmental bodies from municipalities to the national level must be strong enough and sufficiently well prepared to weather the storm of such uprisings and deal effectively with them, as we have from time to time been able to do, over the nearly 200 years of our national history, which accounts for our survival as free men.
Taking the law into one’s own hands destroys our basic credo of rights for every American and compels the limitations temporarily imposed upon those who react with this unlawful response to failure of redress in their complaints of injustices. The orderly processes of government must be utilized for such redress of wrongs.
Lord Mansfield, Chief Justice of England, (1756-1788) said:
“To be free is to live under a government by law.”
Wanton destruction and disregard for the rights and property of others under the guise of dissent is not to be tolerated. It violates our traditional system of justice (which has never been so tolerant of dissent as it is today).
Lawful, peaceful dissent deserves to be encouraged; unlawful dissent accompanied by violence and destruction cannot be tolerated in an orderly society. Citizens who turn liberty into license and respect for law into civil disobedience violate the system of law which is their greatest protection. The acceptance of lawlessness in any form has always been a mistake.
Here the City acted with courage and forthrightness in promptly declaring a state of emergency which existed. Unfortunately, it did not continue with its Commission action in doing what the Mayor instead did in establishing the curfew and the penalties for its violation. It was the Commission as the sole legislative body, and not the Mayor, which was empowered to enact ordinances by Resolution establishing any violations and penalties (Charter §§ 21 and 36-Ch. 57-1322, Laws of Florida 1957). Only the direction and control were the Mayor’s. We must zealously guard America’s traditional separation of powers in the legislative, executive and judicial bodies of government; for that time tested formula will fail if each does not “check and balance” the other.
Petitioner City cites its Ordinance 2848 which generally incorporates all applicable state statutes (common to many city charters). The City then refers to Fla.Stat. § 870.04, F.S.A. which places authorization to command dispersal of riotous assemblies in various peace officers who are named and also in “a mayor or commissioner”. The statute makes it a crime for persons so ordered to disperse, to disobey such command and provides a penalty.
While Fla.Stat. § 870.04, F.S.A., may be separately invoked in such a violation, it cannot be substituted as a basis for the prosecution for violation of a curfew here which was charged under the invalid May- or’s proclamation establishing the penalty, which should have been done by ordinance. Respondent was not charged under the statute but with violation of the Mayor’s proclamation and therefore such prosecution was properly prohibited by the learned Chancellor below.
The certified question is accordingly answered in the negative, i. e., that Charter § 57 (e) could not and did not confer this authority upon the Mayor to establish a curfew and penalty, but required Commission *195 action in accordance with charter provisions vesting all legislative power in the Commission alone. This limitation upon the executive applies as well to municipalities as it does between the Congress and the President on the national level.
Section 57(e) in question granted power in the Mayor to “take command” of the City’s forces in time of grave public danger and emergency and this authority is not questioned. Indeed the direction of a single head in such matters is to be desired and can be most effectively put into use in this manner in an emergency.
History teaches us, however, the danger of vesting total power in a single individual without controls or restraint, even in an emergency. Just as anarchy cannot be tolerated ; neither can a police state.
The able opinion of the 4th District Court of Appeal, basing its ruling upon these great principles, is therefore approved in both its sound reasoning and the judgment which is hereby affirmed. It is so ordered.
ROBERTS, C. J., and ERVIN, BOYD and DREW (Retired), JJ., concur.