261 So.2d 801 (1972)
CITY OF MIAMI BEACH, a Municipal Corporation, Appellant,
v.
FLEETWOOD HOTEL, INC., et al., Appellees.
No. 39780.
Supreme Court of Florida.
April 12, 1972.
*802 James A. Kraus, New York City, Jonathan Weiss, Alfred Feinberg, Miami, Leonard Helfand, Miami Beach, and Tobias Simon, Miami, for appellant.
Cypen & Nevins, Miami Beach, and Dubbin, Schiff, Dubbin & Berkman, Miami, for appellees.
ROBERTS, Chief Justice.
We here review by direct appeal a decision of the Circuit Court, Dade County, holding unconstitutional an Ordinance of the City of Miami Beach purporting to regulate rents. In rendering his opinion and making his decision the trial judge construed a controlling provision of the Constitution, namely, Section 2, Article VIII, Constitution of Florida, F.S.A. See also Lissenden Company, Inc. v. Board of County Commission of Palm Beach County, 116 So.2d 632 (Fla. 1960). Ordinance No. 1791, entitled "Housing and Rent Control Regulations," provides for regulation of rents in all housing with four or more rental units except for hospitals, nursing homes, retirement homes, asylums or public institutions, college or school dormitories or any charitable or educational or non-profit institutions, hotels, motels, public housing, condominiums and cooperative apartments, and any housing accommodations completed after December 1, 1969.
The City Council enacted the Ordinance in October, 1969 after making a determination that an inflationary spiral and a housing shortage existed in the City which required the control and regulation of rents. The City contends that it acted with the intent and purpose of protecting its residents from exorbitant rents.
Several lessors, who were directly affected, filed a complaint seeking declaratory judgment and injunctive relief and attacking the validity on constitutional grounds. After considering motions for summary judgment filed by both parties, the Circuit Court, Dade County, declared the Ordinance invalid, holding, inter alia, that the Ordinance was an unlawful delegation of legislative authority by the City Council and construed Section 2, Article VIII, supra. This appeal followed and we affirm.
The trial court declared the Ordinance invalid after determining that the City of Miami Beach does not have the power to enact a rent control ordinance, that the *803 Ordinance was an unlawful delegation of legislative authority by the City Council, and that the Ordinance conflicted with state law, specifically Sections 83.03, 83.04 and 83.20, Florida Statutes, F.S.A.
The legal issues involved in this case are as follows:
(1) Whether or not the City of Miami Beach has the power to enact this rent control ordinance?
(2) Whether or not the rent control ordinance is an unlawful delegation of legislative authority?
(3) Whether or not the rent control ordinance conflicts with state law?
The first issue must be answered in the negative. The City of Miami Beach does not have the power to enact the ordinance in question. This Court recognizes that the language in the Florida Constitution which governs the powers exercisable by municipalities has been changed by Article VIII, Section 2(b), 1968 Florida Constitution.
Article VIII, Section 8 of the Constitution of 1885 reads,
"The Legislature shall have power to establish, and to abolish, municipalities to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time .. ."
Section 2, Article VIII of our new 1968 Constitution provides,
"(a) Establishment. Municipalities may be established or abolished and their charters amended pursuant to general or special law ...
"(b) Powers. Municipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law." (Emphasis supplied)
Although this new provision does change the old rule of the 1885 Constitution respecting delegated powers of municipalities, it still limits municipal powers to the performance of municipal functions.
That the paramount law of a municipality is its charter, (just as the State Constitution is the charter of the State of Florida,) and gives the municipality all the powers it possesses, unless other statutes are applicable thereto, has not been altered or changed. Gontz v. Cooper City, (Fla.App., 1970) 228 So.2d 913, Clark v. North Bay Village, et al., (Fla. 1951) 54 So.2d 240. The powers of a municipality are to be interpreted and construed in reference to the purposes of the municipality and if reasonable doubt should arise as to whether the municipality possesses a specific power, such doubt will be resolved against the City. Liberis v. Harper (Fla. 1925) 89 Fla. 477, 104 So. 853. "Municipal corporations are established for purposes of local government, and, in the absence of specific delegation of power, cannot engage in any undertakings not directed immediately to the accomplishment of those purposes." Hoskins v. City of Orlando, Florida (5th Cir., 1931) 51 F.2d 901. The aforestated holding of the United States Fifth Circuit Court is entirely consistent with the 1968 change in our Constitution.
The Charter of the City of Miami Beach does not authorize the City of Miami Beach the power to enact a rent control ordinance. Section 6 of the Code contains no mention of such a power. The only possible source of such a power is Section 6 (x) which permits the City "to adopt all ordinances or do all things deemed necessary or expedient for promoting or maintaining the general welfare, comfort, education, morals, peace, health and convenience of said city, or its inhabitants and to exercise all of the powers and privileges conferred upon cities or towns by the General Law of Florida when not inconsistent herewith."
*804 The weight of authority is that without specific authorization from the state, the cities cannot enact a rent control ordinance either incident to its specific municipal powers or under its General Welfare provisions. Warren v. City of Philadelphia, (1956) 387 Pa. 362, 127 A.2d 703, Heubeck v. City of Baltimore, (1954) 205 Md. 203, 107 A.2d 99, Grofo Realty Co. v. Bayonne, (1957) 24 N.J. 482, 132 A.2d 802, Wagner v. Mayor and Municipal Council of City of Newark, (1957) 24 N.J. 467, 132 A.2d 794.
Local governments have not been given omnipotence by home rule provisions or by Article VIII, Section 2 of the 1968 Florida Constitution. "Matters that because of their nature are inherently reserved for the State alone and among which have been the master and servant and landlord and tenant relationships, matters of descent, the administration of estates ... and many other matters of general and statewide significance, are not proper subjects for local treatment... ." Wagner v. Mayor and Municipal Council of Newark, supra, at 800. Mr. Justice Cardozo, in Adler v. Deegan, 251 N.Y. 467, 167 N.E. 705, 713 (Ct.App. 1929) made the following statement which is in support of the abovestated proposition,
"There are other affairs exclusively those of the state ... None of these things can be said to touch the affairs that a city is organized to regulate, whether we have reference to history or to tradition or to the existing forms of charters."
Furthermore, since the inception of federal controls after the beginning of World War II, legislative history and the development of case law shows a recognition that rent control was not a matter within the realm of municipal power without express authority from the state and the existence of an emergency  as hereinafter discussed. Wagner v. Newark, supra. The Supreme Court of Errors of Connecticut has held that a city charter conferring police power in general terms did not empower the city to adopt a rent control ordinance. Old Colony Gardens, Inc., et al. v. City of Stamford, et al., 147 Conn. 60, 156 A.2d 515 (1959).
The State of Florida through legislative action has enacted statutory provisions to regulate the landlord tenant relationship. Chapter 83, Fla. Stat.F.S.A. Absent a legislative enactment authorizing the exercise of such a power by a municipality, a municipality has no power to enact a rent control ordinance.
In the area of rent control legislation in general, the Supreme Court of the United States has placed severe limitations on the power of state governments in the area of rent control. When such legislation is enacted, deprivation of rights under the Fifth and Fourteenth Amendments to the Constitution of the United States, and freedom to contract are at stake. The only justification for the utilization of such legislation found by the U.S. Supreme Court is an emergency. Marcus Brown Holding Co. v. Feldman, 256 U.S. 170, 41 S.Ct. 465, 65 L.Ed. 877 (1921), Lincoln Building Associates v. Barr, 1 N.Y.2d 413, 153 N.Y.S.2d 633, 135 N.E.2d 801, appeal dismissed 355 U.S. 12, 78 S.Ct. 12, 2 L.Ed.2d 20. Emergency has been narrowly defined. An increase in the cost of living (an inflationary spiral) alone is not a justification for rent control legislation which limits the amount of rent which a tenant may be required to pay. Chastleton Corporation, et al. v. Sinclair, et al., 264 U.S. 543, 44 S.Ct. 405, 68 L.Ed. 841 (1924). Explicitly designating the type of emergency which would be a viable basis for such legislation, the United States Supreme Court has held in Levy Leasing Co. v. Siegel, 258 U.S. 242, at 245, 42 S.Ct. 289, at 290, 66 L.Ed. 595.
"The warrant for this legislative resort to the police power was the conviction on the part of the state legislators that there existed in the larger cities of the state a social emergency, caused by an insufficient supply of dwelling *805 houses and apartments, so grave that it constituted a serious menace to the health, morality, comfort, and even to the peace of a large part of the people of the state. That such an emergency, if it really existed, would sustain a resort, otherwise valid, to the police power for the purpose of dealing with it cannot be doubted, for, unless relieved, the public welfare would suffer in respects which constitute the primary and undisputed, as well as the most usual basis and justification, for exercise of that power." (emphasis supplied).
As regards the second issue involved herein, this Court finds in reviewing the constitutionality vel non of the rent control ordinance that some of the provisions amount to an unlawful delegation of legislative authority by the City Council of the City of Miami Beach without appropriate guidelines or the fixing of the outer limits as to the discretion involved. The Ordinance, among other things, provides:
"Section 16 A.2. Definitions:
A... . ., except for:
(e) Certain high rental or special accommodations such as condominiums and co-ops whose tenants in the opinion of the city rent agency, do not require the protection of this Ordinance.
...
Section 16 A.4. General Powers and Duties of the City Rent and Rehabilitation Administration:
A. The city rent agency shall establish maximum rents which shall be those rents in effect on September 1, 1969.
B. Such agency, however, may correct or set aside any rent resulting from illegality, irregularity, or fraud.

C. Such rents shall be established having regard for those factors bearing on the equities of the matter.

...
F. Further adjustments of maximum rents may be made by the city rent agency where:
(a) ...
(i) Should a landlord permit housing violations to exist beyond a reasonable time, then the city rent agency shall have the power to decrease the rent until the danger is eliminated ..." (All underscoring added).
The same restrictions which apply to the Legislature's delegation of legislative authority also apply to the enactment of municipal ordinances under the general police power by municipalities in that city ordinances must not constitute an improper delegation of legislative, executive or administrative power. Blitch v. City of Ocala, 142 Fla. 612, 195 So. 406 (1940). It has been previously held by this Court in Smith v. Portante, 212 So.2d 298, 299 (Fla. 1968), that:
"No matter how laudable a piece of legislation may be in the minds of its sponsors, objective guidelines and standards should appear expressly in the act or be within the realm of reasonable inference from the language of the act where a delegation of power is involved and especially so where the legislation contemplates a delegation of power to intrude into the privacy of citizens." (Underscoring added).
The rent control Ordinance at issue in the instant case does not contain objective guidelines and standards for its enforcement by the City Rent Agency nor can such be reasonably inferred from the language of the Ordinance.
Unrestricted discretion in the application of a law without appropriate guidelines and determining its meaning may not be delegated by the City Council to an agency or to one person. Stewart v. Stone, 130 So.2d 577 (Fla. 1961); Amara v. Town of Daytona Beach, 181 So.2d 722 *806 (Fla.App. 1st, 1966). In Dickinson v. State, 227 So.2d 36, 37 (Fla. 1969), this Court said:
"The exact meaning of the requirement of a standard has never been fixed. The exigencies of modern government have increasingly dictated the use of general rather than minutely detailed standards in regulating enactments under the police power. However, when statutes delegate power with inadequate protection against unfairness or favoritism, and when such protection could easily have been provided, the reviewing court should invalidate the legislation. In other words, the legislative exercise of the police power should be so clearly defined, so limited in scope, that nothing is left to the unbridled discretion or whim of the administrative agency charged with the responsibility of enforcing the act. Mahon v. County of Sarasota, 177 So.2d 665 (Fla. 1965)."
......
"An ordinance requiring a nursery to obtain a certificate showing that it `[had] been approved by the Florida State Welfare Board' was held invalid in State ex rel. Ware v. City of Miami, 107 So.2d 387 (Fla.App. 3d Dist. 1958), the Court saying:
"`As drawn, the effect of the ordinance is to confer upon the State Welfare Board the authority to grant approval to one yet withhold it from another, at whim, and without guides or accountability.'
"See also, Yellow Cab Company v. Ingalls, 104 So.2d 844 (Fla.App. 2d Dist. 1958); Barrow v. Holland, 125 So.2d 749 (Fla. 1960); Lewis v. Florida State Board of Health, 143 So.2d 867 (Fla.App. 1st Dist. 1962); Amara v. Town of Daytona Beach Shores, 181 So.2d 722 (Fla.App. 1st Dist. 1966)."
Yet, as provided for in Ordinance No. 1791, Section 16 A.3, the City Rent and Rehabilitation Administration established by this Ordinance shall consist solely of one individual, the City Rent Administrator. In this single individual is vested unbridled discretion to determine which accommodations are to be controlled and a number of other things. See Section A.2(e), Section 14 A.4(A) (B) (C), (F). This Court held in its recent opinion Municipal Court, City of Fort Lauderdale v. Patrick, 254 So.2d 193 (opinion filed October 27, 1971) which involved the delegation of authority to the Mayor to establish curfews:
"History teaches us, however, the danger of vesting total power in a single individual without controls or restraint, even in an emergency."
As to the third issue, we agree with the finding of the trial court that this rent control ordinance does conflict with Florida Statutes Sections 83.03, 83.04, 83.06 and 83.20, F.S.A. Municipal ordinances are inferior in status and subordinate to the laws of the State and must not conflict therewith. If doubt exists as to the extent of a power attempted to be exercised which may affect the operation of a state statute, the doubt is to be resolved against the ordinance and in favor of the statute. City of Wilton Manors v. Starling, 121 So.2d 172 (Fla.App. 1960), City of Coral Gables v. Seiferth, 87 So.2d 806 (Fla. 1956).
Section 16 A.5 D provides:
"It shall be unlawful for any person to remove a housing unit from the market if the same will result in eviction."
F.S. 83.04, F.S.A. provides a tenancy at will may be terminated by either party upon giving of specified notice. F.S. 83.04, F.S.A. provides that a tenant who holds over after a written lease has expired is a tenant at sufferance. F.S. 83.06, F.S.A. provides that a landlord may demand and receive double rent from a tenant who refuses to give up possession. F.S. 83.20, F.S.A. provides that a tenant at will or sufferance may be removed from the premises, evicted, if he holds over and continues in possession of the premises after the expiration of his time.
*807 The trial court having correctly held the Ordinance invalid, and no reversible error having been made to appear, the judgment under review is affirmed.
It is so ordered.
CARLTON, ADKINS and BOYD, JJ., concur.
DEKLE, J., concurs in part and dissents in part with opinion.
ERVIN, J., dissents with opinion.
McCAIN, J., dissents.
DEKLE, Justice (concurring in part and dissenting in part):
I respectfully dissent from the majority view on the first issue (issues) holding that a city in Florida does not have the power to enact a rent control ordinance and further holding that it is an unlawful delegation of legislative authority. In these respects I concur with Justice Ervin's able dissent, based upon the change brought about by the people's vote in the 1968 Constitution in Fla. Const. art. VIII, § 2(b) (1968), and the cases cited.
I do concur in that part of the majority (and disagree with Justice Ervin's view) on the second point that the Miami Beach Ordinance is deficient because it does not set forth sufficient guidelines and standards to meet constitutional requirements.
ERVIN, Justice (dissenting):
I cannot agree with the majority's conclusions.
The majority holds, first, that the City of Miami Beach does not have the power to enact a rent control ordinance absent specific authorization from the Legislature of the State of Florida. Although such a conclusion would have been correct under the 1885 Constitution, it is not proper under Article VIII, Section 2(b) of the 1968 Constitution and Section 167.005, Florida Statutes, F.S.A., which statutorily implements that constitutional provision. The majority has totally ignored the intent and plain meaning of these new sections. Its holding on this point will return to this state the plethora of local bills, which evil was supposedly obviated by Article VIII, Section 2(b). That section provides:
"Municipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law. Each municipal legislative body shall be elective." Art. VIII, § 2(b), Fla. Const. (Emphasis supplied.)
The comparable provision in the 1885 Constitution, Article VIII, Section 8, was as follows:
"The Legislature shall have power to establish, and to abolish, municipalities to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time. When any municipality shall be abolished, provision shall be made for the protection of its creditors." (Emphasis supplied.)
The difference in the two provisions is obvious. Under the earlier constitution, municipalities had only such powers as were specifically granted them by the Legislature. "Legislative control over cities ... [was] absolute, subject only to the restriction that it shall not contravene some provision of the Constitution." Cobo v. O'Bryant, Fla. 1959, 116 So.2d 233, 236. The converse is now true. The 1968 revision to the Florida Constitution has given municipalities governmental, corporate, and proprietary powers to enact municipal legislation unless otherwise provided by law. Commentary to Art. VIII, § 2(b), 26A F.S.A., pp. 291, 292.
Under the pertinent section of Florida's Constitution, therefore, a municipality may enact a rent control ordinance without receiving specific authorization from the *808 State Legislature if (1) rent control is a municipal function and (2) there is no contrary or superseding legislation. Article VIII, Section 2(b), places no other limitations on a municipality's power to enact ordinances.
It seems clear to me that rent control can be a municipal function. Accord, Warren v. City of Philadelphia, 1955, 382 Pa. 380, 115 A.2d 218; Heubeck v. City of Baltimore, Md. App. 1954, 205 Md. 203, 107 A.2d 99. The housing problems of a community are unquestionably the concern and responsibility of the government of that city. Without adequate, decent housing a city cannot function as a modern peaceful community. Unchecked spiraling rents can destroy it. Certainly those closest to the problem, the people of the affected municipality, are the ones most able to recognize and attempt to cure an untoward condition.
It is equally clear that there is no contrary or superseding legislation preventing the City of Miami Beach from enacting this rent control ordinance. The majority, as its third point, holds the ordinance is superseded by Chapter 83, Florida Statutes. Such a position is totally untenable. The chapter deals with the duration and termination of nonfreehold estates, rent, removal of tenants, and deposit money. Nowhere does the chapter mention rent control. Rent control has to do with rents to be paid  nothing else. Chapter 83 does not relate to the amount of rents to be paid.
There is nothing in the existing laws denying a Florida municipality the power to enact a rent control ordinance. The Legislature, by general law, has not entered upon or pre-empted the field. Likewise, there is no special law denying the City of Miami Beach the power to adopt a rent control ordinance. Nor is there anything in the Dade County Home Rule amendment (Article VIII, Section 11, 1885 Constitution, which continues until a new home rule charter may be adopted under the 1968 Constitution) precluding adoption of a rent control ordinance by the City of Miami Beach. And there is nothing in the City of Miami Beach's Charter precluding it from adopting such an ordinance. In fact, I find, contrary to the majority's conclusion, that the Charter specifically authorizes its enactment.
Rent control legislation is considered a proper exercise of the legislating body's police power as found in its constitution or charter. Old Colony Gardens v. City of Stamford, 1959, 147 Conn. 60, 156 A.2d 515; Block v. Hirsh, 1921, 256 U.S. 135, 41 S.Ct. 458, 65 L.Ed. 865; Warren v. City of Philadelphia, supra, and Heubeck v. City of Baltimore, supra. The majority has cited Old Colony Gardens v. City of Stamford, supra, as holding "a city charter conferring police power in general terms did not empower the city to adopt a rent control ordinance." This interpretation of that decision's holding is misleading. The Supreme Court of Errors of Connecticut, in Old Colony Gardens, held a municipality's rent control ordinance invalid because that state's legislature had "declared ... that as a matter of public policy controls were no longer necessary in the interest of the public health, safety and welfare... . Municipalities cannot enact ordinances contrary to the public policy of the state as declared in state legislation." Old Colony Gardens v. City of Stamford, supra, 156 A.2d at 517.
The Charter of the City of Miami Beach contains the following police power provision:
"Sec. 6. Powers of city generally.
"The City of Miami Beach shall have the power:
* * * * * *
"(x) To adopt all ordinances or do all things deemed necessary or expedient for promoting or maintaining the general welfare, comfort, education, morals, peace, health and convenience of said city, or its inhabitants and to exercise all of the powers and privileges *809 conferred upon cities or towns by the general law of Florida, when not inconsistent herewith." (Emphasis supplied.)
This section is sufficient to give the City the power to enact a rent control ordinance;[*] police power provisions do not need to specifically enumerate those areas in which they authorize legislation. See State ex rel. Ellis v. Tampa Waterworks Co., 1908, 56 Fla. 858, 47 So. 358. This Court has frequently upheld municipal ordinances as proper exercises of police power on the authority of provisions in municipal charters similar to Section 6(x) quoted above. State ex rel. Hosack v. Yocum, 1939, 136 Fla. 246, 186 So. 448 (ordinance prohibiting taxicab drivers from soliciting for hotels the patronage of their passengers); City of Miami v. Romer, Fla. 1952, 58 So.2d 849 (ordinance establishing set-back requirements); City of Miami Beach v. Hogan, Fla. 1953, 63 So.2d 493 (ordinance seeking to acquire property for a public park).
The test of whether an ordinance is a valid exercise of a city's police power was announced by this Court in City of Miami v. Kayfetz, Fla. 1957, 92 So.2d 798. There, at 801-802, we said:
"[C]ourts should be very cautious in declaring a municipal ordinance unreasonable, there being a peculiar propriety in permitting the inhabitants of a City through its proper officials to determine what rules are necessary for their own local government.
* * * * * *
"The test is not whether we think it a wise measure or the best means of approaching a problem, but rather whether it has a rational relation to the public health, morals, safety or general welfare and is reasonably designed to correct a condition adversely affecting the public good. And the test must be applied in view of the character or nature of the condition to be remedied and all circumstances relating thereto."
This ordinance meets the Kayfetz test. A proposed draft of the ordinance contained the following language which described the conditions in the City of Miami Beach at the time the ordinance was proposed:
"It shall be noted that an emergency housing situation exists on Miami Beach. That such emergency is brought about by an acute shortage of safe, sanitary and adequate low cost rental housing accommodations. That the majority of residents are senior citizens on subsistence level pensions and cannot afford the existing rents for the available housing. That said rents are increasing at an inflationary spiral whereas the income of the residents remains fixed. That the population increases daily due to an influx of tourists and Cuban refugees."
A recent report on the 1970 Census shows that the percentage of elderly residents in Miami Beach has increased 170 per cent between 1960 and 1970 and that now 55 per cent of Miami Beach's population is over the age of 62.
The public good unquestionably must be adversely affected by skyrocketing rents coupled with a sudden and unusual pressure for housing. Rent control is the logical, rational means of immediately coping with this problem. The situation in Miami Beach today is similar to that during the Second World War in communities throughout the United States in which armed forces or defense industries were located; in those municipalities there was "an acute shortage of rental housing accommodations" and "a marked upward movement in the general level of residential rents." Bowles v. Willingham, 1944, 321 U.S. 503, 506 n. 1, 64 S.Ct. 641, 643, 88 L.Ed. 892. In an attempt to stabilize and reduce rents, among other things, the Congress *810 enacted the Emergency Price Control Act of 1942. The Supreme Court of the United States upheld the rent control portion of the Act in Bowles v. Willingham, supra.
Only a rent control act can immediately and effectively remedy the harm done by lack of housing and spiraling rents. Because of the current condition in Miami Beach, I find it impossible to conclude the City's rent control ordinance is unreasonble. It clearly and unquestionably meets the Kayfetz mandate that "it [have] ... a rational relation to the public health, morals, safety or general welfare and [b] ... reasonably designed to correct a condition adversely affecting the public good."
In addition, the ordinance meets the Levy Leasing Co. v. Siegel, 1922, 258 U.S. 242, 42 S.Ct. 289, 66 L.Ed. 595, emergency test cited by the majority. The record shows the City of Miami Beach is faced with "a social emergency, caused by an insufficient supply of dwelling houses and apartments, so grave that it constitute[s] a serious menace to the health, morality, comfort, and even to the peace of a large part of the people of the [City]... ." Levy Leasing Co. v. Siegel, supra, at 245, 42 S.Ct. at 290. This ordinance was not enacted solely because of an "inflationary spiral." It was enacted because a composite of conditions  a rapidly increasing number of inhabitants; a majority of elderly residents with fixed incomes; spiraling rents, and insufficient housing  created an emergency situation in the City.
For the above reasons, I have concluded the majority, in answering its first question ("whether or not the City of Miami Beach has the power to enact this rent control ordinance") in the negative, has ignored the plain, clear, unambiguous language of Article VIII, Section 2(b) of this State's Constitution as well as decisions of this Court and of the Supreme Court of the United States. I find the law of the State of Florida demands the question be answered in the affirmative.
The majority holds, secondly, "that some of the provisions [of the rent control ordinance] amount to an unlawful delegation of legislative authority by the City Council of the City of Miami Beach without appropriate guidelines or the fixing of the outer limits as to the discretion involved." I do not agree.
The Supreme Court of the United States, in considering the question of delegation of legislative authority, has said:
"The mandate of the Constitution, art. 1, § 1, that all legislative powers granted `shall be vested' in Congress has never been thought to preclude Congress from resorting to the aid of administrative officers or boards as fact-finding agencies whose findings, made in conformity to previously adopted legislative standards or definitions of Congressional policy, have been made prerequisite to the operation of its statutory command. The adoption of the declared policy by Congress and its definition of the circumstances in which its command is to be effective, constitute the performance, in the constitutional sense, of the legislation function." Opp Cotton Mills v. Administrator, 1941, 312 U.S. 126, 144, 61 S.Ct. 524, 532, 85 L.Ed. 624.
Time and again this Court has held:
"The Legislature may not delegate the power to enact a law, or to declare what the law shall be, or to exercise an unrestricted discretion in applying a law; but it may enact a law complete in itself, designed to accomplish a general public purpose, and may expressly authorize designated officials within definite valid limitations to provide rules and regulations for the complete operation and enforcement of the law within its expressed general purpose. This principle of the law is peculiarly applicable to regulations under the police power, since the complex and everchanging conditions that attend and affect such matters made it impracticable for the Legislature to prescribe all necessary rules and regulations." *811 Bailey v. Van Pelt, 1919, 78 Fla. 337, 350, 82 So. 789, 793. (Emphasis supplied.) Ex Parte Lewis, 1931, 101 Fla. 624, 135 So. 147; Knight & Wall Co. v. Bryant, Fla. 1965, 178 So.2d 5, cert. denied 383 U.S. 958, 86 S.Ct. 1223, 16 L.Ed.2d 301.
The rent control ordinance of the City of Miami Beach is a law enacted by the proper legislative body, the City Council, to accomplish a general public purpose, the control of rents. It authorizes the City Rent Agency to accomplish this goal. Limitations on the agency's power, as well as definite guidelines to be followed by the agency, are written into the ordinance.
Contrary to the majority's implication, the entire rent control authority is not vested in one individual, the City Rent Administrator. Section 16A.3.C of the ordinance provides:
"There shall be an advisory committee composed of not less than 10 members who shall be appointed by the city council. The committee shall be provided by the administrator with all data necessary for it to advise and consult with the mayor, council, and administrator on policy matters."
In addition, the City Rent Agency is a branch of the Miami Beach government, similar to other city agencies. As such, it is subject to the controls which the Mayor and City Council normally exercise over city agencies and is accountable to the Mayor and City Council for all its actions.
However, even without this advisory committee and other governmental controls, the ordinance should not be held unconstitutional because it established a one-man rent control board. The Supreme Court of the United States has upheld similar one-man agencies. Bowles v. Willingham, supra; Opp Cotton Mills v. Administrator, supra. It is not the number of administrators that is important, but rather the type of guidelines they have been given in the legislation establishing their agencies.
The City of Miami Beach Rent Control Agency's guidelines are set forth in Section 16A.4 of the ordinance. The section is entitled "General Powers and Duties of the City Rent and Rehabilitation Administration," and provides as follows:
"A. The city rent agency shall establish maximum rents which shall be those rents in effect on September 1, 1969.
"B. Such agency, however, may correct or set aside any rent resulting from illegality, irregularity, or fraud.
"C. Such rents shall be established having regard for those factors bearing on the equities of the matter.
"D. A survey by the city rent agency shall consider all factors affecting rents to determine the effectiveness of the program and to make adjustments.
"E. The city rent agency may adopt, amend, promulgate, or rescind any rules, orders, or regulations it deems necessary to effect this ordinance and its purposes, and subpoena persons or data and records from whatever source.
"F. Further adjustments of maximum rents may be made by the city rent agency where:
(a) The rental income from a property yields a net annual return of less than 10% of the invested capital of the property. The means of valuation shall be determined by the city rent agency and made available to the public.
(b) The landlord and tenant can agree to a rental increase for a two year term, but which shall not exceed 10% of the present rent.
(c) The landlord and tenant can agree to decrease or increase the facilities, *812 service, furnishings, substantially enough to warrant a rent adjustment, or
(d) Where there has been substantial material rehabilitation of the accommodations and/or property resulting in added value and increased life, but excluding ordinary maintenance.
(e) Where there has been a major capital improvement recently, required for the operation or preservation of the structure.
(f) Rent increases will not be allowed where a tenant has been improperly evicted so the landlord could make improvements to qualify for a rent increase.
(g) The city rent agency may authorize rent adjustments every year, such adjustments to be tied to the cost of living.
(h) No rent increases shall be allowed if (1) a proper agency of the city or state has found housing violations by the landlord which endanger the safety or health of the tenants (2) and landlords are required to certify that they will maintain all essential services so long as rent increases are in effect.
(i) Should a landlord permit housing violations to exist beyond a reasonable time, then the city rent agency shall have the power to decrease the rent until the danger is eliminated."
This is clearly not "unrestricted discretion in the application of a law without appropriate guidelines" as contended by the majority. The provisions of the ordinance do not appear to be arbitrary or unlawful or subject to whim or caprice on the part of the rent agency. Rather, they are logical guidelines and standards reasonably adapted to the achievement of the specific purposes and objectives of the rent control ordinance. The ordinance contains a specific definition of maximum rents and enumerates specific instances in which further adjustments of such rents may be made.
That the ordinance does place some discretion in the hands of the Administrator is obvious. Equally obvious, however, is the fact that this alone will not invalidate it. The Supreme Court of the United States, in United States v. Rock Royal Co-Op, 1939, 307 U.S. 533, 574, 59 S.Ct. 993, 1013, 83 L.Ed. 1446, discussed the issue of delegation of authority from the legislature to an agency and said:
"From the earliest days the Congress has been compelled to leave to the administrative officers of the Government authority to determine facts which were to put legislation into effect and the details of regulations which would implement the more general enactments. It is well settled, therefore, that it is no argument against the constitutionality of an act to say that it delegates broad powers to executives to determine the details of any legislative scheme. This necessary authority has never been denied. [citations omitted] In dealing with legislation involving questions of economic adjustment, each enactment must be considered to determine whether it states the purpose which the Congress seeks to accomplish and the standards by which that purpose is to be worked out with sufficient exactness to enable those affected to understand these limits. Within these tests the Congress needs specify only so far as is reasonably practicable."
This Court, speaking through Mr. Justice Roberts, has previously said "The subject matter of a statute may ... be such that only a general scheme or policy can be laid down by the Legislature, and the details of the legislative policy can best be handled at the administrative level." Conner v. Joe Hatton, Inc., Fla. 1968, 216 So.2d 209, 212.
*813 This is unquestionably true in the area of rent control. Anyone dealing with this subject must be given administrative authority with sufficient flexibility and latitude to meet varying economic conditions arising from time to time in particular rental situations. The national wage, price, rent, et cetera, freeze program is a current example of the necessity of delegation of administrative flexibility and latitude to a board or commission whose actions can vary depending upon changing economic conditions. The Emergency Price Control Act of 1942 is another example. See Bowles v. Willingham, supra.
In addition to containing rent control guidelines, the ordinance clearly defines those housing accommodations which are subject to rent control as well as those which are exempt. It provides for all enforcement proceedings to be conducted through the City Attorney of Miami Beach. It clearly and specifically lists prohibited conduct. Orders of the City Rent Agency are enforced "by obtaining court orders." Due process, therefore, is assured persons charged with violating the ordinance or refusing to follow an order of the Agency. It would be difficult to draft more satisfactory standards for enforcement.
I am convinced the ordinance is valid. The judgment of the Circuit Court of Dade County should be reversed.
When spiraling costs and insufficient housing are localized, rent control is properly a municipal matter. Whether we agree with the policy of rent control is immaterial; whether a municipality will adopt a rent control ordinance should be left to the discretion of the local city government. Where not superseded by other legislation, municipal ordinances establishing rent control policies must be upheld under Article VIII, Section 2(b) of the Florida Constitution; they can be struck down only if it is shown they violate some other constitutional provision. The ordinance in this case does not.
NOTES
[*] Of course, as I indicated first herein, the 1968 Florida Constitution gives the City of Miami Beach the power to enact the rent control ordinance and it is immaterial whether the City Charter contains authority for it.