Ernest A. Sellers City Attorney Live Oak
QUESTIONS:
1. Is a municipality required under s. 250.48, F. S., to pay its employees who are members of the Florida National Guard their municipal salaries while on military leaves of absence (not exceeding 17 days at any one time) to engage in active state duty, field exercises, or other training ordered under the provisions of Ch. 250, F. S.?
2. Is a municipality authorized under s. 250.48, F. S., to compensate or reimburse its employees who are members of the National Guard only for the difference between their municipal salary and military pay received while on military leave?
3. Is a municipality authorized under s. 250.48, F. S., to offset or deduct from accrued annual vacation time of its employees who are members of the National Guard military leaves of absence for which such employees have been paid their full municipal salaries?
SUMMARY:
The clear language of s. 250.48, F. S., requires that a municipality pay its officers or employees who are members of the Florida National Guard their full municipal salaries while on authorized military leave under that statute. The statute necessarily operates to prohibit municipalities from paying such officers or employees only the difference between their established municipal salary and their military pay. Further, the statute prohibits any reduction in an officer's or employee's ordinary accrued vacation time by the amount of authorized military leave taken. The Municipal Home Rule Powers Act, Ch. 166, F. S., does not permit a contrary result or local alternatives to the application or operation of s. 250.48, F. S., because the regulation, compensation, and operation of the National Guard has been preempted to the state and is primarily a state, and not a municipal, purpose.
The first question is answered in the affirmative, and the second and third questions are answered in the negative.
AS TO QUESTION 1:
Section 250.48, F. S., provides:
 All officers and employees of the State and of the several counties and municipalities within the state, who are members of the Florida National Guard, shall be entitled to leave of absence from their respective duties, without loss of pay, time or efficiency rating, on all days during which they shall be engaged in active state duty, field exercises or other training ordered under the provisions of this chapter, provided the leaves of absence without loss of pay, granted under the provisions of this section, shall not exceed 17 days at any one time. (Emphasis supplied.)
Under this statute, National Guardsmen who are officers or employees of the state and of the several counties and municipalities within the state are entitled to military leave from their governmental duties as a matter of right, `without loss of pay, time or efficiency rating.' The guardsman who is a municipal officer or employee is entitled to full compensation from the municipality during military leave up to 17 days at any one time. This legal entitlement is express and unequivocal.
Section 250.48, F. S., does not expressly or impliedly grant to the state or to the several counties and municipalities within the state any discretion in the matter. The statute does not authorize any local alternatives to its application and operation. On the contrary, it requires that military leave rights be uniformly recognized and administered. The statute contains the phrase `shall be entitled,' which language is normally construed as mandatory. See S.R. v. State, 346 So.2d 1018 (Fla. 1977); White v. Means, 280 So.2d 20 (1 D.C.A. Fla., 1973). A statutory mandate that a thing be done in a certain way operates, in legal effect, to prohibit its being done any other way. See In re Advisory Opinion to the Governor Civil Rights, 306 So.2d 520 (Fla. 1975); Alsop v. Pierce, 19 So.2d 799 (Fla. 1944). Because the statute, by its plain language, confers no discretion upon the municipalities and allows no local alternatives in application or operation, it cannot be construed as mere permissive or enabling legislation. On the contrary, the statute bestows an enforceable legal entitlement on the personnel described therein.
Identical language of entitlement is found in s. 115.07, F. S., which deals with military leave rights for state, county, or municipal officers or employees who are military or naval reservists and National Guardsmen on field or coast defense exercises or other training required by federal law or military or naval training regulation. Section 115.07, F. S., reads in part:
 All officers or employees of this state, or of the several counties or municipalities of this state, who are commissioned reserve officers or reserve enlisted personnel in the United States military or naval service or members of the National Guard, shall be entitled to leave of absence from their respective duties, without loss of pay, time or efficiency rating, on all days during which they shall be engaged in field or coast defense exercise or other training ordered under the provisions of the United States military or naval training regulations for such personnel when assigned to active duty; provided that leaves of absence granted as a matter of legal right under the provisions of this section shall not exceed 17 days in any one annual period. . . . (Emphasis supplied.)
This statute relates to the same subject as s. 250.48, F. S., and should be read in pari materia so as to produce a harmonious and consistent effect. See Mann v. Goodyear Tire and Rubber Co.,300 So.2d 666 (Fla. 1974). The pertinent provisions of the two statutes are identical: Each states that the described personnel `shall be entitled to leave of absence from their respective duties without loss of pay, time or efficiency rating.' This office has consistently ruled that s. 115.07, F. S., requires the state and the counties and municipalities of the state to pay their officers or employees their full salaries while on military leave under s. 115.07 (not to exceed 17 days in any one annual period) regardless of any other compensation from the military or other sources. See AGO 074-189; AGO 053-322, 1953-1954 Biennial Report of the Attorney General, p. 124; AGO 051-273, 1951-1952 Biennial Report of the Attorney General, p. 212; AGO 047-152, 1947-1948 Biennial Report of the Attorney General, p. 129. As this office held in AGO 051-273, supra, and AGO 048-13, 1947-1948 Biennial Report of the Attorney General, p. 359, those conclusions with respect to s. 115.07, F. S., apply with equal force to the rights of National Guardsmen under s. 250.48, F. S.
Accordingly, I conclude that s. 250.48, F. S., requires state municipalities to pay full compensation to their officers or employees who are members of the National Guard while on military leave from their municipal duties to engage in active state duty, field exercises, or other training ordered under the provisions of Ch. 250, F. S., up to 17 days at any one time.
AS TO QUESTION 2:
As stated above, s. 250.48, F. S., creates in municipal officers and employees who are National Guardsmen specified rights to military leave `without loss of pay.' I concluded in response to question 1, above, that the statute requires the payment of full municipal salary or compensation regardless of any pay which the officer or employee receives from the military. Implicit in this conclusion is the proposition that the statute prohibits any offset or deduction of military pay from municipal salary during the period of authorized military leave.
If the municipality were to reduce or offset the compensation paid to its officers or employees on military leave under s. 250.48, F. S., by the amount of their military pay, such officers or employees would suffer a `loss of pay' which the statute prohibits. The statute is mandatory, as stated above, and allows no discretion or power on the part of a municipality to depart from its operation. I therefore conclude that municipalities are prohibited from reducing or offsetting the compensation paid to their officers or employees on authorized military leave under s.250.48, F. S., in any manner whatsoever. Previous opinions from this office have reached the same conclusion. See AGO 048-13,supra. See also AGO's 074-189 and 053-322, supra, which deal with compensation under the military leave provisions of s. 115.07, F. S.
In so ruling I am particularly mindful of the status of the militia as the peace-keeping and order-preserving force of the State of Florida. The militia is established under organic law in s. 2, Art. X, State Const., and consists of all able-bodied inhabitants of the state who are or have declared their intention to become citizens of the United States, and who are not exempt by law because of religious creed. Chapter 250, F. S., implements the constitutional provisions governing the militia, and represents the authoritative legislative policy regarding this sovereign state government and military function. Within the militia, the National Guard exists as an organized and armed force established by statute, and commanded by the Governor. See ss. 250.02, 250.06, and 250.07, F. S. The National Guard is available for ready mobilization by the Governor to carry out the purposes of the militia, such as preserving the public peace, executing the laws of the state, suppressing insurrection, and responding to public disaster or riot. See ss. 250.06, 250.08, and 250.28, F. S. The state's maintenance, training, and use of the National Guard confers a benefit upon municipalities and political subdivisions of the state by protecting them and their citizens, as well as protecting the state as a whole (and sometimes the nation). The National Guard may therefore be said to serve a dual state and local purpose.
It must be emphasized that the National Guard is a state institution or organization which serves an indispensable state governmental purpose. Cf. State ex rel. Milton v. Dickenson,33 So. 514 (Fla. 1903), in which the Supreme Court held:
 From these provisions of our organic law it will be seen that that instrument recognizes and provides for the militia as a state institution. . . . Their [the militia's] other functions and duties are summarized in section 4 of article 14, above quoted, as being subject to the call, not of a county or any local official, but of the governor, to preserve the public peace, to execute the laws of the state, to suppress insurrection, or to repel invasion, not confinedly in any particular county or locality, but anywhere within the borders of the state. In a democratic form of government like ours the military establishment may be said to be the dernier resort of governmental authority, that is never called upon except when all other civil authority fails and becomes powerless to preserve public order. It is the strong arm of, and represents the might of, governmental sovereignty, and is a power that should never be surrendered to an agency of the state, such as a county or municipality, but should be held, as our constitution seems to contemplate, subject to be wielded solely by the supreme sovereign arm of the state. [Id. at 516.]
Municipalities are creatures of the Legislature and have only limited powers and territorial jurisdiction. Section 2, Art. VIII, State Const.; City of Miami v. Kinchinko, 23 So.2d 627 (Fla. 1945); State ex rel. Gibbs v. Couch, 190 So. 723 (Fla. 1939). As such, municipalities have no power or authority to make policy with respect to the state's sovereign military force. On the contrary, the state military force is exclusively a state governmental function in which municipalities have no duty or power whatsoever. The state has in effect preempted the military function and no municipal action may operate to restrict the state's power or depart from its requirements.
Section 250.48, F. S., requires payment of full municipal compensation to municipal officers and employees who are National Guardsmen during the authorized and required period of military leave. In so acting, the Legislature has also determined that the payment of such compensation is also a necessary municipal purpose (as well as a function responding to a state and a federal purpose) such as would authorize and require the expenditure of municipal funds. The Legislature is competent to make such a determination.
Florida case law clearly supports the legislative use of power in this area. See State ex rel. Gibbs v. Gordon, 189 So. 437 (Fla. 1939), holding that the Legislature may appropriate state funds, and compel a county to appropriate county funds, to assist in a national defense project, where the project resulted in a material development benefiting the state and county. Cf. Amos v. Matthews,126 So. 308, 324 (Fla. 1930), holding that the Legislature may compel the levy of a county tax for a purpose of both local and general concerns, or to enforce the legitimate contribution of the several counties to the state's general expenses for state government.
I recognize that municipalities are granted broad powers of home rule under Ch. 166, F. S. I am nevertheless unable to conclude that these home rule powers authorize a departure from s. 250.48, F. S. In the first place, the constitution limits the exercise of municipal power to municipal purposes, notwithstanding any broad language found in the Municipal Home Rule Powers Act. Section 2(b), Art. VIII, State Const. The provision for the militia and the granting of military leave to its members who are on duty or in training under Ch. 250, F. S., and requiring municipalities and political subdivisions to contribute toward such essential services, are powers and functions of the state in its sovereign capacity. Although the several municipalities and political subdivisions derive a benefit from the expenditure, the expenditure is primarily for a state purpose rather than a municipal purpose.
Moreover, the Municipal Home Rule Powers Act prohibits municipalities from exercising powers which have been expressly preempted to the state. Section 166.021(3)(c), F. S. The constitution and statutes do preempt to the state all powers to establish, regulate, compensate, and operate the state militia. Section 1(a) and (d), Art. IV, and s. 2, Art. X, State Const., Ch. 250, F. S. Cf. Public Employees Relations Commission v. Fraternal Order of Police, Local Lodge No. 38, 327 So.2d 41, 43 (2 D.C.A. Fla., 1976), holding that part II of Ch. 447, F. S., implementing s. 6, Art. I, State Const., preempted the subject of public employee bargaining to the state, to the extent that a municipality can have no jurisdiction unless the provisions and procedures of its ordinance have been approved by the Public Employees Relations Commission.
Chapter 250, F. S., is the State Military Code, which applies uniformly throughout the state. It in no sense deals with the conduct of municipal government or with any municipal purpose or powers conferred by s. 2(b), Art. VIII, State Const., or Ch. 166, F. S. If there is doubt remaining as to the powers of municipalities to operate in this area, that doubt must be resolved against the exercise of municipal power. See City of Miami Beach v. Fleetwood Hotel, Inc., 261 So.2d 801 (Fla. 1972); State ex rel. Meredith v. Borman, 189 So. 669 (Fla. 1939). Cf. Edgerton v. International Co., 89 So.2d 488 (Fla. 1956); Gessner v. Del-Air Corp., 17 So.2d 522 (Fla. 1944).
As repeatedly stated above, the provisions of s. 250.48, F. S., confer no discretion on municipalities and prohibit them from adopting local alternatives to its operation or application. The statute specifically entitles National Guardsmen within its purview to military leave `without loss of pay,' and therefore operates to prohibit any offset or reduction in normal municipal compensation paid to such National Guardsmen during authorized military leave. Accordingly, the instant municipality is without the power to reduce or offset municipal compensation paid to National Guardsmen who are municipal officers or employees during their authorized military leave under s. 250.48, F. S.
AS TO QUESTION 3:
Your third question is closely related to your second question, and consistency requires that the two questions be treated alike. For the same reasons discussed above, I conclude that a municipality may not reduce an employee's accrued vacation time by the amount of military leave taken under s. 250.48, F. S., or abridge in any way the ordinary vacation rights customarily provided for such employees.
My predecessors in this office reached a similar conclusion. See
AGO 048-13, supra, construing former s. 250.28, F. S., and AGO 047-152, supra, construing s. 115.07, F. S. The conclusions reached in these opinions apply with equal force to the vacation rights of municipal employees who are National Guardsmen on authorized military leave under present s. 250.48, F. S.
Prepared by: David K. Miller, Assistant Attorney General