ROSE NAYOR vs. RENT BOARD OF TOWN OF BROOKLINE
& another.

Norfolk.   April 2, 1956. — May 7, 1956.

Present: QUA, C.J., WILKINS, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

Rent Control.  Housing.  Municipal Corporations, Rent control.  Moot
    Question.  Statute, Repeal.  District Court, Rent control.  Equity
    Pleading and Practice, Declaratory proceeding.  Evidence, Judicial
    notice.

There can be no judicial notice of acceptance of a statute by a town.
    [135]
St. 1955, c. 225, in terminating the rent control act, St. 1953, c. 434,
    without a saving clause, effected a complete repeal of the rent control
    act and rendered moot the questions raised by a pending complaint
    brought under § 6 (a) of the rent control act by a tenant of controlled
    housing accommodations in a town seeking to have an order by the
    rent board of the town permitting her landlord to increase her rent
    declared "unconstitutional, illegal and void."   [135]
The rent board of a municipality was not required by § 5 (a) of the rent
    control act, St. 1953, c. 434, to determine whether or not a landlord
    of particular controlled housing accommodations was receiving there-
    from rent adequate to produce a fair net operating income before
    permitting him to increase the rent in accordance with a formula
    adopted by the board for general application.   [136]
Dismissal by the District Court of a complaint against the rent board of
    a municipality under St. 1953, c. 434, § 6 (a), would have been in-
    correct in a proper case for declaratory relief.   [136]

COMPLAINT, filed in the Municipal Court of Brookline on
February 19, 1954.

The case was heard by Grover, J.

Charles F. Nayor, for the plaintiff.

Daniel G. Rollins, Town Counsel, (Albert R. Mezoff with
him,) for the defendant.

WILKINS, J.   The town of Brookline accepted St. 1953,
c. 434, entitled "An Act relative to rent control," an emer-
gency law permitting local rent control in succession to
that of the United States (§ 14).   The vote of acceptance
by a town meeting was required to "include a declaration

that a substantial shortage of rental housing accommodations exists in such . . . town and that the control of rents therein is necessary in the public interest" (§ 12).

This is a complaint in a District Court brought under § 6 (a) by a tenant of an apartment, which was "controlled housing accommodations" (§ 2 [b]), against the rent board appointed by the town (§ 4) and Dryco Properties, Inc., her landlord. Relief is sought with respect to action of the board permitting the landlord to raise the rent.[1] The District Court judge found "that the action of the board was a fair and reasonable carrying out of the administrative authority vested in it," and dismissed the complaint. The Appellate Division dismissed a report, and the tenant appealed.

The complaint contains allegations that on December 30, 1953, when the maximum legal rent for the apartment was $104.90 a month, the landlord filed with the board a petition for adjustment of rent; that on February 4, 1954, the board issued an order of approval adjusting the maximum rent of the apartment at $117.20 a month in accordance with a formula adopted by the board; that the board failed to hold any hearing or to do anything to determine whether the landlord was receiving a fair net operating income or to receive evidence in this regard offered by the tenant; and that the tenant has been denied "due process of law." The complaint prayed that the order of approval of the rent board "be declared unconstitutional, illegal, and void."

We turn to the decision of the District Court judge for his findings. The board, after careful investigation and consideration, prepared a formula, evaluating all five factors mentioned in § 5 (a)[2] and permitting certain percentages

---

[1] Statute 1953, c. 434, § 6 (a), provides that the "district court shall have exclusive original jurisdiction of such proceedings and shall be authorized to take such action . . . as is provided in the case of the superior court" under G. L. (Ter. Ed.) c. 231A, inserted by St. 1945, c. 582, § 1, which establishes a procedure for declaratory relief.

[2] Subsection (a) authorizes the rent board by regulation or order to "make such individual and general adjustments in . . . [the Federal established] maximum rents with respect to any housing accommodations or any class of housing accommodations as may be necessary to remove hardships or to

of increase in rents according to the services given a tenant. At a public hearing, the board explained the formula, and counsel for the plaintiff opposed its application to any request to raise rent until it should be established that the rent received did not yield a "fair net operating income" (§ 5 [a]). The board adopted the formula and, after notice to the respective tenants with opportunity to reply, applied it to more than 2,600 dwelling units for which applications for permission to raise rents had been filed. One of these' was by the defendant landlord with respect to the plaintiff's apartment. The plaintiff's counsel opposed before the board the application of the formula and requested opportunity to summons a representative of the landlord and to examine him with a view to ascertaining whether the rent yielded a fair net operating income. "The board declined to give such opportunity, did nothing further, applied its formula and issued an order permitting the rent to be raised in accordance therewith, which the landlord did."

1. A preliminary question, not argued, arises from the fact that "Brookline Rent Board," and not the individual members of the board, is made a party defendant. We shall assume, without deciding, that St. 1953, c. 434, § 6 (a), authorized a complaint to be made against the board by its correct name, which is that appearing at the top of this opinion. Compare G. L. (Ter. Ed.) c. 182, § 6; *State Street Trust Co.* v. *Hall*, 311 Mass. 299, 304.

2. We shall also assume, without deciding, that under § 6 (a) a tenant could be a "person . . . aggrieved by any action, regulation or order of the rent board [who] may file

correct other inequities, or further to carry out the purposes and provisions of this act . . . . In making and recommending individual and general adjustments to remove hardships or to correct other inequities, due weight shall be given to the principle of maintaining maximum rents for controlled housing accommodations at levels which will yield to landlords a fair net operating income from such housing accommodations. In determining whether the maximum rent for controlled housing accommodations yields a fair net operating income from such housing accommodations, due consideration shall be given to the following, among other relevant factors . . . ." Here follow the five factors referred to by the judge. As the opinion of neither court below and neither brief in this court has deemed them important to quote, we likewise omit them.

a complaint against the rent board in the district court."
The record indicates that the District Court judge made
two contradictory rulings on this point.

3. The board contends that the questions raised by the
tenant have become moot. The provisions of St. 1953,
c. 434, as amended by St. 1954, c. 496, were continued in
effect until April 30, 1955, by St. 1955, c. 225, which further
provided that should c. 225 be accepted by a town those
provisions might be continued until a date not later than
December 31, 1955. On the last named date "said chapter
four hundred and thirty-four, as so amended, and all powers
delegated therein shall terminate." St. 1955, c. 225, § 2.
We cannot take judicial notice that c. 225 was accepted by
the town. *Howes* v. *Essex*, 329 Mass. 381, 382. *Meadows*
v. *Town Clerk of Saugus*, 333 Mass. 760, 764. But for
present purposes it is immaterial exactly when rent control
terminated in Brookline.

The original act provided for termination on June 30,
1954, and contained a clearly stated saving clause: "As to
offences committed or rights or liabilities incurred prior to
such termination, the provisions of this act shall be treated
as still remaining in force for the purpose of sustaining any
proper suit, action or prosecution with respect to any such
right, liability or offence." St. 1953, c. 434, § 14. Under
this language a right to sue for an overcharge would have
been preserved. *Commonwealth* v. *Bennett*, 108 Mass. 30,
31–32. 23 Am. Jur., Forfeitures & Penalties, § 42. But
St. 1955, c. 225, in terminating c. 434 without a saving
clause effected a complete repeal.

The object of c. 434 was to relieve the shortage of resi-
dential household accommodations by increasing the num-
ber of units and, by gradually relieving the emergency, to
promote a return to a more nearly normal basis (§ 1).
*Russell* v. *Treasurer & Receiver General*, 331 Mass. 501, 507,
509. Its purpose was not to create vested rights. "The
civil action was purely the creature of the statute. What
the Legislature gave it could take away, no vested rights
being involved." *Pittsley* v. *David*, 298 Mass. 552, 557.

*Wilson* v. *Head*, 184 Mass. 515, 518. *Wrentham* v. *Fales*, 185 Mass. 539, 542. *Sullivan* v. *Cushing*, 299 Mass. 38. *Finnegan* v. *Checker Taxi Co.* 300 Mass. 62, 66.

The record does not disclose whether the defendant landlord demanded, or the plaintiff paid, rent at an increased rate. But if we assume that this happened, there no longer exists any right under St. 1953, c. 434, § 7 (a), to sue the landlord for the amount of the excess, or, in certain cases, for attorney's fees, costs, and liquidated damages in the amount of $50 or in not more than three times the amount of the excess payment, whichever is greater.

4. On the merits, we see no harm in adding that we observe no error in the District Court judge's rejection of the fundamental contention of the plaintiff, which was that St. 1953, c. 434, § 5 (a), "made mandatory a determination of whether or not any petitioning landlord was receiving rent adequate to produce fair net operating income as a condition precedent to permitting any increase."

5. The decision of the District Court judge contained an order that the complaint be dismissed. Under G. L. (Ter. Ed ) c. 231A, inserted by St. 1945, c. 582, § 1, which is made the source of the authority of the District Court by St. 1953, c. 434, § 6 (a), the bill should not be dismissed in a proper case for declaratory relief. *Brattle Films, Inc.* v. *Commissioner of Public Safety*, 333 Mass. 58, 59. But here, where the proceedings have become moot, the complaint should be dismissed on that ground.

6. The order of the Appellate Division is reversed, and a decision is to be entered dismissing the complaint on the ground of mootness.

*So ordered.*