281 So.2d 484 (1973)
In re APPORTIONMENT LAW.
John A. FUTCH et al., Plaintiffs,
v.
Richard (Dick) STONE, As Secretary of State of Florida; and Harry M. Nearing, As Supervisor of Elections of Duval County, Florida, Defendants.
No. 42253-I.
Supreme Court of Florida.
August 15, 1973.
Joseph M. Glickstein, Jr. of Glickstein, Crenshaw, Glickstein, Fay & Allen, Jacksonville, for plaintiffs.
Robert L. Shevin, Atty. Gen., and Jerry E. Oxner, Asst. Atty. Gen., for defendants.
ADKINS, Justice.
This cause is before us on the complaint of the officials of the City of Neptune Beach seeking a declaratory judgment and other relief respecting the Apportionment Law, Joint Senate Resolution 1305 (Laws of Florida, 1972), as it affects the voters of the City. We have already determined that the Apportionment Law is valid on its face (In Re: Apportionment Law, Senate Joint Resolution No. 1305, 263 So.2d 797 (Fla. 1972), and have retained jurisdiction to hear particular complaints about the application of the apportionment plan pursuant to Fla. Const., art. III, § 16(c), F.S.A., and Fla. Stat. § 86.061, F.S.A. We have sole jurisdiction to hear the present complaint.
*485 Under the apportionment plan, all of the Consolidated City of Jacksonville, with the exception of the second and fourth urban services districts (Jacksonville Beach and Neptune Beach), are included in Senate Districts 7, 8, and 9, while those two sections of the consolidated city are included in Senate District 11, which also includes St. Johns and Sumter Counties, and portions of Clay, Lake, Putnam, and Volusia Counties.
Plaintiffs contend that the apportionment plan has thus left the voters of Neptune Beach and Jacksonville Beach without an effective voice in that local legislation which will affect all of the citizens of Jacksonville, but no one else. They urge, therefore, that the creation of the four senate districts which include Jacksonville was arbitrary and capricious, and deprives them of the constitutional right to effectively instruct their representatives on issues affecting only Jacksonville in violation of Fla. Const., art. I, § 5, F.S.A. It is further contended that the apportionment plan, as it affects the citizens of Neptune Beach, does not meet the standards set by Fla. Const., art. III, § 16(a), F.S.A., in that it does not base the senatorial districts making up Duval County on "a basis reasonably related to the subject of the law." Fla. Const., art. III, § 11(b), F.S.A. Recognizing that Fla. Const., art. III, § 11(b), F.S.A., applies only to statutes or laws, and that Apportionment Law, Senate Joint Resolution No. 1305, does not meet the constitutional requirements of a law (Fla. Const., art. III, § 6, F.S.A.), we nevertheless hold that due process requires that resolutions of the Legislature meet the same basic requirements as laws, and that the requirement of Fla. Const., art. III, § 11(b), F.S.A., should apply.
We held in In Re Apportionment Law, Senate Joint Resolution No. 1305, supra, that the apportionment plan is, on its face, valid. However, we added a caveat to our acceptance of the plan:
"[T]he apportionment plan as framed may be constitutional on its face, but upon its application in a particular case the joint resolution may violate organic law." 263 So.2d 797, p. 808.
We added that when such effect as might deprive a political element of the voting population of its strength is demonstrated,
"[W]e will consider whether the apportionment plan still passes constitutional muster." 263 So.2d 797, p. 808.
In our order clarifying the opinion in In Re Apportionment Law, Senate Joint Resolution No. 1305, supra, we provided that this Court retains exclusive State jurisdiction over suits relating to the validity of the apportionment plan, and also provided:
"In the event it becomes necessary to take testimony in order to determine the validity of any district within the apportionment plan, this Court may appoint a commissioner for this purpose." 263 So.2d 797, p. 822.
Thus, the issue presently before this Court is whether or not the plaintiff has presented a question which necessitates the appointment of a commissioner, and this Court will not attempt to determine at this time whether or not plaintiff's contentions present constitutional infirmities in the apportionment plan which would require modification thereof.
The Florida Legislature provided that its
"[O]verriding consideration to this policy is its good faith effort to achieve mathematical preciseness." 1972 Laws of Florida, SJR 1305, § 2(4).
Since our apportionment decision, the United States Supreme Court has provided, however,
"[W]hereas population alone has been the sole criterion of constitutionality in congressional redistricting under Art. I, § 2, broader latitude has been afforded the States under the Equal Protection Clause in state legislative redistricting... ." Mahan v. Howell, 410 U.S. 315, 93 S.Ct. 979, p. 984, 35 L.Ed.2d 320, p. 329 (1973).
*486 The Supreme Court, in Mahan v. Howell, supra, relied on the leading case dealing with apportionment of State legislatures, Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), where the Court applied apportionment standards to legislatures, but added:
"History indicates, ... that many States have deviated, to a greater or lesser degree, from the equal-population principle in the apportionment of seats in at least one house of their legislatures. So long as the divergences from a strict population standard are based on legitimate considerations incident to the effectuation of a rational state policy, some deviations from the equal-population principle are constitutionally permissible... .
"Several factors make more than insubstantial claims that a State can rationally consider according political subdivisions some independent representation in at least one body of the state legislature, as long as the basic standard of equality of population among districts is maintained. Local governmental entities are frequently charged with various responsibilities incident to the operation of state government. In many States much of the legislature's activity involves the enactment of so-called local legislation, directed only to the concerns of particular political subdivisions. And a State may legitimately desire to construct districts along political subdivision lines to deter the possibilities of gerrymandering." 377 U.S. 533, pp. 579-581, 84 S.Ct. 1362, p. 1390-1391.
The Court, in Mahan v. Howell, supra, expanded that reasoning in Reynolds v. Sims, supra, and added:
"Application of the `absolute equality' test ... to state legislative redistricting may impair the normal functioning of state and local governments." 93 S.Ct. 979, p. 984, 35 L.Ed.2d 320, p. 329.
Thus, if it could be shown that the Legislature dealt with questions uniquely limited in interest and importance to the voters of the consolidated City of Jacksonville  including those voters excluded from the Jacksonville senatorial districts  a minor violation in population of senate districts to allow all of the people of Jacksonville to join in the selection of their senators would be acceptable under the rationale of Mahan v. Howell, supra.
However, the Supreme Court, in a case involving the Florida Legislature, disapproved a total deviation of 26 per cent. Swann v. Adams, 385 U.S. 440, 87 S.Ct. 569, 17 L.Ed.2d 501 (1967). In distinguishing the Florida situation from that in Mahan v. Howell, supra, where a 16 per cent variation was approved for Virginians, the Court explained:
"[T]he State of Florida offered no evidence at the trial level to support the challenged variations with respect to either the House or Senate." 93 S.Ct. 979, p. 987, 35 L.Ed.2d 320, p. 332.
The Legislature has recognized the unique problems of municipalities in the form of local legislation, and has granted to cities broad home rule powers with the adoption of House Bill 1020 which, effective October 1, 1973, removes from the legislative arena the vast bulk of the local bills which have previously created a need for all citizens in a municipality to have an effective voice in selecting the senators and representatives to present such local legislation.
While the problems presented by petitioners might have raised sufficient questions to require the appointment of a Commissioner in this cause prior to the adoption of House Bill 1020 by the 1973 Legislature, such questions no longer exist.
Accordingly, the relief sought by petitioners is denied.
It is so ordered.
CARLTON, C.J., and ROBERTS, ERVIN, BOYD, McCAIN and DEKLE, JJ., concur.